G. W. Onthank Company v. Commissioner.
G. W. Onthank Co. v. Commissioner
Docket No. 42593.
United States Tax Court
1954 Tax Ct. Memo LEXIS 250; 13 T.C.M. (CCH) 300; T.C.M. (RIA) 54098; March 31, 1954
*250 Deductions: Interest. - Investment Certificates issued by petitioner to shareholders and others held to be an indebtedness and interest payments thereon were deductible. Richard E. Williams, Esq., 306 Fifteenth Street, Des Moines, Ia., for the petitioner. Mark Townsend, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: Respondent determined deficiencies in income tax of petitioner in the amounts of $8,581.34 for 1947 and $8,917.75 for 1948. Several adjustments are uncontested and can be reflected in a Rule 50 computation. The sole issue for decision is whether certain amounts accrued by petitioner as interest on investment certificates were properly deductible as interest under section 23(b), or whether such amounts were in the *251 nature of dividends. Findings of Fact The stipulated facts are so found and the stipulation is incorporated herein by reference. Petitioner is an Iowa corporation having its principal place of business at Des Moines, Iowa. Its income tax returns for 1947 and 1948 reported income on an accrual basis and were filed with the collector of internal revenue at Des Moines, Iowa. Petitioner was incorporated on December 26, 1941, with the authorized capital stock consisting of 900 shares of Class A stock with a par value of $100 per share and $10,000 shares of Class B stock with a par value of $1 per share. Additional capital stock was authorized and issued, and prior to March 1, 1947, petitioner had issued and outstanding 20,000 shares of Class B (common) stock with a par value of $1 per share and 1,800 shares of Class A (preferred) stock with a par value of $100 per share. Class A stock was non-voting preferred stock on which a dividend not exceeding $6 per share per annum was to be paid out of the net profits of petitioner for each calendar year. The stock was non-voting and subject to retirement out of surplus as authorized by the directors. The directors of petitioner decided *252 additional operating capital was needed and means of raising it were discussed. Some holders of Class A stock evidenced a desire for some type of absolute obligation in place of their preferred stock. On February 3, 1947, a special meeting of petitioner's directors was held and means of raising additional operating capital were considered. Effective March 1, 1947, pursuant to a plan of recapitalization approved by the directors and stockholders, petitioner issued "Investment Certificates" (hereinafter called Certificates) totaling $270,000 face value. Petitioner exchanged Certificates having a face value of $180,000 for the entire issue of Class A stock outstanding. The remaining $90,000 face amount of Certificates was first offered to holders of Class A stock. Some of these holders purchased Certificates for cash in the amount of $65,500. Certificates were also sold for cash to other individuals and companies who had not been Class A stockholders. The recapitalization did not change voting control of petitioner. It did result in a $90,000 increase in working capital. The Certificates were in the following form: "INVESTMENT CERTIFICATE, "TWENTY YEAR 6% INVESTMENT CERTIFICATE *253 OF "G. W. ONTHANK COMPANY, AN IOWA CORPORATION "NO. AMOUNT $ "The G. W. Onthank Company, an Iowa Corporation for value received, promises to pay to the bearer on the 1st day of March 1967 the sum of $ in lawful money of the United States of America at the office of the Company in Des Moines, Iowa, and to pay interest thereon in legal lawful money out of the net income of the said company at the rate of six percent (6%) per annum, payable annually on the 31st day of December of each year, at the office of the Company in Des Moines, Iowa, on presentation of this certificate for endorsement of payment thereon, conditioned, however, upon the net income of the company being sufficient during any interest period to pay the amount due as interest in accord with the terms and provisions hereof. If the net income of the company is insufficient to pay interest at the rate of 6% (six per cent) per annum during any interest period, the Company will pay interest on all outstanding certificates of this issue to the extent of its net income for that interest period and pro rata among the holders of such certificates. The interest on this certificate shall not be cumulative. "This certificate, *254 or any portion of the sum represented hereby, may be assigned in multiples of One Hundred Dollars ($100.00) by endorsement as provided on the back hereof. Notice of assignment must be given in writing to the G. W. Onthank Company and the original certificate returned to the Company in order that the assignee's name may be registered on the books of the corporation as the holder thereof and new certificates issued as the interests of the owners shall appear. "This certificate is one of a duly authorized issue of Investment Certificates of the corporation, fully registered and serially numbered of like date, tenor and effect, in the aggregate sum of Two Hundred Seventy Thousand Dollars ($270,000.00). The obligation evidenced hereby is severable and may be enforced without regard to other registered holders. "This certificate and all certificates of this issue are subject in all respects and subordinate, both as to principal and interest, to the claims of all creditors of the corporation, and upon dissolution or liquidation of the corporation, no payment shall be due or payable upon this certificate unless and until all creditors of the corporation shall have been paid in full. All *255 holders of this issue of Investment Certificates shall rank pari passu with each other and superior to the stockholders of the corporation with respect to their capital stock. "The corporation reserves the right to pay and redeem this certificate or any part thereof on any interest payment date and in the following manner: After determination by the Board of Directors of the Company as to the principal amount of these certificates that it desires to retire, the Company shall first invite all certificate holders to offer their certificates to the Company at not less than par and at not more than One Hundred Two Dollars ($102.00) for each One Hundred Dollars ($100.00) of face amount, plus in each case, accrued and unpaid interest. If the amount offered by holders of these certificates is more than the amount established to be retired the certificates offered will be taken up and redeemed by the Company in the order of the lowest offering prices until the full amount established to be retired has been taken up. If the amount offered as above, is less than the amount to be retired, those certificates offered will be taken up, and the balance of the established amount to be retired will *256 be selected by lot in units of One Hundred Dollars ($100.00) face amount and will be redeemed at One Hundred Two Dollars ($102.00) for each One Hundred Dollars ($100.00) of face amount. In event of a partial retirement of the amount represented by this certificate, the registered holder hereof agrees to present this certificate to the corporation for reissue of the amount of the principal sum not retired. "Provision for retirement sinking fund reserve and other terms and conditions of this obligation are set forth in a resolution of the Board of Directors of the corporation duly adopted at a meeting held on February 3, 1947, which resolution is spread upon the minutes of the corporation and is hereby made a part hereof. "If one or more of the following events of default should occur, viz: (a) If default be made in the punctual payment of any instalment of interest on any outstanding Investment Certificate or Certificates or (b) if default be made in the observance or performance of any of the terms of these certificates or of the provisions of the resolution of the Board of Directors of the Company authorizing this issue, and if any such default shall continue for a period of two *257 (2) years after written notice thereof shall have been given to the Company by the holder, then the entire principal amount of this certificate shall become due and payable immediately. In event suit is brought by the holder to enforce the obligations of the Company hereunder and if it shall be determined in such suit that the Company is in default, the Company will pay to the holder the cost and expenses of collection, including reasonable attorney fees. "IN WITNESS WHEREOF, G. W. Onthank Company has caused this certificate to be duly executed by its proper officers this day of 1947. ATTEST: Secretary President" Petitioner accrued the sums of $13,123 and $16,200 on its books in 1947 and 1948, respectively, as interest on its outstanding Certificates and claimed these amounts as deductions. Respondent disallowed the claimed deductions. The Investment Certificates on which the above sums were accrued as interest were bona fide obligations of petitioner and the accrued sums were interest on those obligations. Opinion The question here is essentially a fact question. Tribune Publishing Co., 17 T.C. 1228. If the Investment Certificates issued by petitioner represented *258 a bona fide indebtedness the amounts accrued as interest thereon were properly claimed as deductions. The Certificates were cast in the form of interest bearing obligations. A business purpose for the issuance of interest bearing securities was present, i.e. the need for additional capital and the reluctance of holders of the old preferred stock to invest further unless an absolute obligation were offered. The recapitalization succeeded in raising additional capital as planned. There is some suggestion in respondent's argument that the only purpose was to gain a tax advantage, but that suggestion rests merely on the presence at the directors' meeting of petitioner's tax advisor and the fact that he prepared the form of the Certificates. We do not think this suggestion in the argument is convincing as to the purpose of the recapitalization. Our ultimate finding of fact decides the issue in favor of petitioner. Decision will be entered under Rule 50.